IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                                    No. CR 09-3598 JB

JERRY L. PADILLA, III,
JERRY L. PADILLA, JR.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed September 6, 2011 (Doc. 164)("Sentencing Memorandum"). The Court held a sentencing hearing on September 14, 2011. The primary issues are: (i) whether the Court should accept the agreed upon sentence in Defendant Jerry L. Padilla Jr.'s and Plaintiff United States of America's plea agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure; (ii) whether the Court must apply the criminal history category calculated during the sentence for the predicate offense during the revocation of Defendant Jerry L. Padilla Jr.'s supervised release; (iii) whether the Court should give Padilla Jr. credit for the 644 days he has been in custody; and (iv) whether the Court should recommend that Padilla Jr. be placed in the Federal Correctional Institute La Tuna if his classification is low risk or, alternatively, to the Federal Correctional Institute Phoenix. The Court will grant these requests in part and deny them in part. Pursuant to the parties' rule 11(c)(1)(C) plea agreement, the Court will downwardly vary to a sentence of 37 months for Counts 2 through 4 in the Indictment, filed December 16, 2009 (Doc. 18). Pursuant to the parties' rule 11(c)(1)(C) plea agreement, the Court will vary downwards to a sentence of 37-months imprisonment for Padilla Jr.'s

sentence for the revocation of his supervised release in United States v. Jerry Padilla, Jr., criminal case docket number 94-0618, based on the incorrect calculation of Padilla Jr.'s criminal history category the Honorable John Edwards Conway, United States District Judge, reached in those proceedings regarding the predicate offense.  The Court has no authority to tell the Bureau of Prisons ("BOP") how to calculate Padilla Jr.'s credit for time served, but will make certain that the pretrial determination on the cover page of the Presentence Investigation Report, disclosed August 12, 2011, is accurate so as to facilitate that calculation.  The Court will make the requested recommendations regarding the location of Padilla Jr.'s confinement.

## PROCEDURAL BACKGROUND

On December 16, 2009, the Defendants were indicted for: (i) conspiracy to distribute more than 5 kilograms of a mixture and substance containing a detectable amount of cocaine; (ii) distribution of a mixture and substance containing a detectable amount of cocaine on or about March 6, 2009; (iii) distribution of a mixture and substance containing a detectable amount of cocaine on or about March 11, 2009; and (iv) distribution of a mixture and substance containing a detectable amount of cocaine on or about March 30, 2009.  See Indictment.

Padilla Jr., pursuant to a Plea Agreement, filed May 12, 2011 (Doc. 154)("Original Plea Agreement"), pled guilty to Counts 2 through 4 of the Indictment, charging him with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C), that being distribution of cocaine.  Padilla Jr. also pled "guilty to a Grade A violation of his term of Supervised Release with respect to cause number 94-CR-618." Original Plea Agreement ¶ 3, at 2.  The Original Plea Agreement stipulates to a sentence of 37-months imprisonment for Counts 2 through 4 of the Indictment.  See Original Plea Agreement ¶ 6, at 3.  The Original Plea Agreement stipulates to a 51-month sentence for Padilla Jr's supervised release violation.  See Original Plea Agreement ¶ 6, at 3.  The parties stipulated that these sentences

will run consecutively.  See Original Plea Agreement ¶ 6, at 3.

The United States Probation Office ("USPO") disclosed a PSR for Padilla Jr. on August 12, 2011, which grouped the guideline calculation for Counts 2 through 4.  See PSR ¶ 43, at 15.  The USPO calculated Padilla Jr.'s total offense level to be 33.  See PSR ¶ 52, at 17.  The PSR calculated a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3) after converting the $441,008.00 discovered at Padilla III's residence to 18.375 kilograms of cocaine and adding in the .3651 kilograms of cocaine from the transactions in which Padilla Jr. engaged.  See PSR ¶ 44, at 15-16.  The PSR included a 2-level upward adjustment under U.S.S.G. § 3B1.1(c) based on Padilla Jr.'s status as a leader or organizer of criminal activity.  See PSR ¶ 47, at 16.  The PSR included a 3-level reduction under U.S.S.G. § 3E1.1 based on Padilla Jr.'s acceptance of responsibility.  PSR ¶ 51, at 17.  The PSR lists his criminal history category as III, based on 6 criminal history points.  See PSR ¶ 60, at 24.  The PSR calculated that an offense level of 33 and a criminal history category of III results in a guideline imprisonment range of 168 to 210 months.  See PSR ¶ 98, at 33.  There being no disputes about the factual findings in the PSR, the Court adopts them as its own.

On September 6, 2011, Padilla Jr. filed his Sentencing Memorandum.  In his Sentencing Memorandum, he requests that the Court accept the parties' modified rule 11(c)(1)(C) plea agreement.  See Sentencing Memorandum at 1.  He asserts that the parties have agreed to reduce his sentence to a total of 74-months imprisonment, because of certain errors reached in the presentence report from the criminal case docket number 94-0618 that the current PSR corrected.  See Sentencing Memorandum at 1.  He directs the Court to a letter his attorney, Ray Twohic, sent to Assistant United States Attorney Joel Meyers discussing this error in the criminal history calculation.  See Letter to Assistant United States Attorney Joel Meyers from Ray Twohic at 1-2 (dated August 26, 2011), filed September 6, 2011 (Doc. 164-1)("Letter").  Specifically, the he

contends that, during the sentencing for the predicate offense, there was an erroneous calculation that Padilla Jr.'s criminal history category was VI when it should have actually been IV. See Letter at 2. Padilla Jr. also requests that the Court give him credit for the 644 days he has already served when calculating his sentence. See Sentencing Memorandum at 2. Lastly, he asks the Court to "recommend designation to the LaTuna Camp or the LaTuna low level facility if he is eligible, but if not, to the Phoenix facility," so that he may be closer to his family. Sentencing Memorandum at 2.

Padilla Jr., pursuant to a modified Plea Agreement, filed September 13, 2011 (Doc. 171)("Modified Plea Agreement"), pled guilty to Counts 2 through 4 of the Indictment, charging him with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C), that being distribution of cocaine. Padilla Jr. also pled "guilty to a Grade A violation of his term of Supervised Release with respect to cause number 94-CR-618." Modified Plea Agreement ¶ 3, at 2. The Modified Plea Agreement stipulates to a sentence of 37-months imprisonment for Counts 2 through 4 of the Indictment. See Modified Plea Agreement ¶ 6, at 3. The Modified Plea Agreement stipulates to a 37-month sentence for Padilla Jr's supervised release violation. See Modified Plea Agreement ¶ 6, at 3. The parties stipulated that these sentences will run consecutively. See Modified Plea Agreement ¶ 6, at 3.

At the sentencing hearing on September 14, 2011, Padilla Jr. noted that he has now filed his acceptance of responsibility letter and that this letter had not been completed at the time the USPO issued the PSR. See Transcript of Hearing at 3:8-12 (taken September 14, 2011)(Twohig)("Tr.").[1] The parties agreed to the Court reducing Padilla Jr.'s offense level 3 levels for acceptance of responsibility. See Tr. at 3:23-4:10 (Court, Meyers, Twohig). The Court asked the parties to

---

[1] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

provide support for their requested variance. See Tr. at 4:11-15 (Court). The United States noted that the conduct underlying Counts 2 through 4 involved roughly 350 grams of cocaine. See Tr. at 5:2-10 (Meyers). The Court then acquired about its ability to review United States District Court Judge Conway's calculation of Padilla Jr.'s criminal history calculation for the predicate offense underlying the supervised release revocation. See Tr. at 5:5-6:3 (Court). The United States contended that the Court has inherent power under Chapter 7 of the sentencing guidelines to look at the criminal history category at the time of the original sentence and that it is not required to rely on the a previous presentence report. See Tr. at 6:23-4 (Meyers). The Court asked how this matter was different from adjusting the sentence Judge Conway originally imposed. See Tr. at 7:5-9 (Court). The United States asserted that the Court has the obligation to calculate the correct criminal history category regardless of any prior determinations. See Tr. at 8:7-12 (Meyers). The United States suggested that the Court could vary on Padilla Jr.'s sentence in a manner that achieves the same result. See Tr. at 8:19-9:4 (Meyers). The Court noted that the criminal history category calculated during the sentencing for the predicate offense normally controls in a proceeding for revocation of supervised release. See Tr. at 10:11-11:13 (Court). Padilla Jr. noted that everyone agrees the prior criminal history calculation was incorrect. See Tr. at 12:13-23 (Twohig).

In support of a variance, the United States noted that it has evidence of only three discrete drug transactions involving cocaine in this case in spite of the large amount of money found in Padilla III's backyard. See Tr. at 15:7-18 (Meyers). The Court asked the United States to flesh out its weaknesses in its case to support a variance. See Tr. at 15:19-16:5 (Court). The United States emphasized that officers did not find the money at Padilla Jr.'s home. See Tr. at 17:1-7 (Meyers). It noted that, while the amount of money itself would be sufficient to support a charge of conspiracy to distribute more than five kilograms of cocaine, it would be difficult to prove that such a

conspiracy existed before a jury based on the small number of transactions at issue. See Tr. at 17:1-22 (Meyers, Court). Padilla Jr. emphasized that the agreed upon sentence was the result of an arms-length negotiation between the parties. See Tr. at 20:24-25:10 (Twohig). Padilla Jr. noted that a great deal of the evidence on which the government would have had to rely would not have been admissible, such as information from informants. See Tr. at 21:6-10 (Twohig). The Court noted that it has no authority to tell the BOP how to calculate a person's credit for time served. See Tr. at 27:21-28:2 (Court). The United States asserted that many people had come to the courtroom to support Padilla Jr. and many people had written letters to the Court on Padilla Jr.'s behalf. See Tr. at 30:2-7 (Meyers). The United States conceded, however, that many of Padilla Jr.'s family members have been engaged in drug trafficking and that Padilla Jr. has been charged in separate proceedings as the leader of the Los Padillas drug organization. See Tr. at 30:12-16 (Meyers). The United States reiterated that Padilla Jr. will serve consecutive sentences for the revocation of his supervised release and the sentences for Counts 2 through 4. See Tr. at 31:6-13 (Meyers).

## RELEVANT LAW REGARDING SUPERVISED RELEASE

Application note 1 to U.S.S.G. § 7B1.4 provides that "[t]he criminal history category to be used in determining" the sentence for revocation of supervised release "is the category determined at the time the defendant originally was sentenced to the term of supervision." U.S.S.G. § 7B1.4 cmt. n.1. Guidelines commentary is generally an authoritative interpretation of the rules contained therein. See Stinson v. United States, 508 U.S. 36, 38 (1993). Notably, the provisions in Chapter Seven of the sentencing guidelines have always been advisory rather than mandatory. See United States v. McClanahan, 136 F.3d 1146, 1149 (7th Cir. 1998). As the United States Court of Appeals for the Tenth Circuit has explained: "Section 7B1.4(a) is therefore not a sentencing guideline per se; it is merely a 'policy statement.'" United States v. Hurst, 78 F.3d 482, 483 (10th Cir. 1996). "In

dealing with violations of supervised release the Sentencing Commission chose to issue policy statements rather than guidelines, in order to permit evaluation after experience with the new supervised release concept." United States v. Boling, 947 F.2d 1461, 1462 (10th Cir. 1991). "While the Chapter Seven policy statements are entitled to 'great weight,' they do not bind the sentencing judge; while they are an 'element in his exercise of discretion,' they are not a substitute for that discretion." United States v. McClanahan, 136 F.3d at 1149.

### LAW REGARDING 18 U.S.C. § 3585(b)(2).

18 U.S.C. § 3585(b)(2) provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences, as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2). "[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing. Rather, the authority resides with the Attorney General, as exercised by the federal Bureau of Prisons." United States v. Brown, 212 F.App'x. 747, 755 (10th Cir. 2007)(citations omitted)(citing United States v. Jenkins, 38 F.3d 1143, 1144 (10th Cir. 1994)). "The Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing. As a result, a federal prisoner dissatisfied with computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence." United States v. Luna-Mora, 180 F.App'x 847, 849 (11th Cir. 2006)(citations omitted)(internal quotation marks omitted); United States v. Fred, No. 05-801, 2008 WL 2229527, at *2 (D.N.M. Fed. 8, 2008)(Browning, J.).

The Supreme Court of the United States held in United States v. Wilson, 503 U.S. 329 (1992), that § 3585(b) does not authorize a district court to compute a sentence credit at sentencing

for time served in pretrial detention.  See 503 U.S. at 331-32.  Rather, credit awards must be made by the Attorney General, through the Bureau of Prisons, after sentencing. "In so holding, the [Supreme] Court recognized that under § 3585(b), Congress has indicated that computation of the credit must occur after the defendant begins his sentence.  A district court, therefore, cannot apply § 3585(b) at sentencing."  United States v. Jenkins, 38 F.3d at 1144 (alterations omitted)(citations omitted)(internal quotation marks omitted).

## ANALYSIS

The Court will vary downwards to a sentence of 37 months for the charges in Counts 2 through 4 of the Indictment.  Pursuant to the Modified Plea Agreement, the Court will vary downwards to a sentence of 37-months imprisonment for Padilla Jr.'s for the sentence for the revocation of his supervised release based on the incorrect calculation Judge Conway reached in the proceedings regarding the predicate offense.  The sentence for revocation of his supervised release will run consecutively to the sentence imposed for Counts 2 through 4 of the Indictment.  The Court has no authority to instruct the BOP how to calculate Padilla Jr.'s time served, but will make certain that the pretrial determination on the cover page of the PSR is accurate so as to facilitate that calculation.  The Court will recommend that Padilla Jr. be placed in the Federal Correctional Institute La Tuna if his classification is low risk or, alternatively, to the Federal Correctional Institute Phoenix.

**I.     THE COURT WILL ACCEPT THE MODIFIED RULE 11(c)(1)(C) PLEA AGREEMENT AND VARY DOWNWARD TO A SENTENCE OF 37 MONTHS FOR THE SENTENCE FOR COUNTS 2 THROUGH 4.**

Between March 6, 2009, and March 18, 2009, Padilla Jr. and Padilla III sold .3651 kilograms of cocaine.  On December 3, 2009, after months of ongoing investigations, officers executed search warrants were executed at Padilla III's residence.  During the search, .74 grams of

methamphetamine and 2.9 grams of cocaine were located, as were several items associated with drug trafficking, including plastic bags, digital scales, numerous cellular telephones, and disposable gloves. In addition, officers seized a total of $441,008.00 at Padilla III's residence. The large amount of money, information gathered during the investigation, as well as the manner in which the money was packaged indicates it was going to be used in drug trafficking. That amount of money converts to 18.375 kilograms of cocaine.

The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is not appropriate for Padilla Jr.'s offenses. The Court agrees with the parties that a sentence of 37 months for Counts 2 through 4 is sufficient to reflect the seriousness of these offenses. The United States has pointed to some weaknesses in its case if the case were to proceed to trial, including proving a criminal conspiracy beyond a reasonable doubt, that the money was found on Padilla III's property as opposed to Padilla Jr.'s property, and that the United States has evidence regarding only three relatively minor drug transactions. The Court has in the past held that weaknesses in the United States' case may be grounds for a variance, because in some cases, such as this one, a sentence of some length is a more just punishment than no sentence at all. See, e.g., United States v. Coriz, No. 09-0765, 2011 WL 1043735, at *1-2 (D.N.M. Mar. 21, 2011)(Browning, J.). Padilla Jr. has an extensive criminal history, and it would not be just for him not to be punished with some incarceration. While the Court has many reservations about accepting the agreed upon sentence -- because of Padilla Jr. allegedly being the leader of the Los Padillas gang -- the Court recognizes that the parties negotiated this sentence as part of an arms-length transaction. The Court must rely heavily on the United States and its ability to assess the strength of its case. The Court

understands that the burden of proof in sentencing proceedings is a preponderance of the evidence, while the United States must prove its case beyond a reasonable doubt at trial. The trial would have primarily focused on the three limited cocaine transactions. Padilla Jr. has seasoned, experienced, and respected counsel defending him. His counsel has secured acquittals in the past, and would have persuasively argued that there was smoke but no evidence beyond a reasonable doubt to support the charges. While the money being in Padilla III's backyard indicates that there is a larger drug organization, the Court is aware that this fact complicates the United States' case. The Court recognizes that both parties' counsel are experienced and may have been able to persuade the jury to find in their favor.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. The Court believes that a sentence of 37 months is appropriate to reflect the seriousness of Padilla Jr.'s crimes, partly given that he will also serve a 37-month consecutive sentence for violation of his supervised release. The 74-month total sentence, while still a variance, is a significant sentence. The length of the sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). The Court recognizes that there was a real risk of the United States securing no conviction in this case, or a conviction for an amount of drugs significantly less than those the USPO converted from the money found in Padilla III's backyard. The Court is also conscious that Padilla Jr. will serve a consecutive sentence in this case based on the revocation of his supervised release, which brings his total sentence -- 74 months -- closer to a guideline range sentence -- 168 to 210 months -- than his sentence for just Counts 2 through 4. When added together, and given the problems with the United States' case, the Court cannot say that the sentence

is a light one. While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable. And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). While, on a clean slate, the Court might have sentenced Padilla Jr. to significantly more, the Court accepts the rule 11(c)(1)(C) plea agreement and sentences Padilla Jr. to 37-months imprisonment for each Counts 2 through 4. The terms of these sentences shall run concurrently, but consecutively to the 37-month sentence for the violation of his supervised release.

## II. THE COURT WILL ACCEPT THE MODIFIED RULE 11(c)(1)(C) PLEA AGREEMENT AND VARY DOWNWARD TO A SENTENCE OF 37 MONTHS FOR THE REVOCATION OF PADILLA JR.'S SUPERVISED RELEASE.

Application note 1 to U.S.S.G. § 7B1.4 provides that "[t]he criminal history category to be used in determining" the sentence for revocation of supervised release "is the category determined at the time the defendant originally was sentenced to the term of supervision." U.S.S.G. § 7B1.4 cmt. n.1. Guidelines commentary is generally an authoritative interpretation of the rules contained therein. See Stinson v. United States, 508 U.S. at 38. Notably, the provisions in Chapter Seven of the sentencing guidelines have always been advisory rather than mandatory. See United States v. McClanahan, 136 F.3d at 1149. As the Tenth Circuit has explained: "Section 7B1.4(a) is therefore not a sentencing guideline per se; it is merely a 'policy statement.'" United States v. Hurst, 78 F.3d

at 483.

The Court believes that it is first appropriate to reach the correct guideline calculation. U.S.S.G. § 7B1.4 tells a court to apply the criminal history category determined at the time the defendant originally was sentenced to the term of supervision when imposing the sentence for revocation of supervised release. Thus, the Court will apply a criminal history category of VI for the sentence for the revocation of supervised release. A grade A violation and criminal history category of VI establishes a guideline imprisonment range of 51 to 63 months. Pursuant to 18 U.S.C. § 3583(e)(3), the maximum term of imprisonment upon revocation is 60 months. Thus, the guideline imprisonment range becomes 51 to 60 months.

Given that U.S.S.G. § 7B1.4 is non-binding, and the parties agree that Judge Conway incorrectly calculated Padilla Jr.'s criminal history category, the Court concludes it is more appropriate to vary downwards to the equivalent of a criminal history category IV. Thus, the Court will vary downward to approximate a criminal history category of IV. A Grade A violation and a criminal history category of IV results in a guideline imprisonment range of 37 to 46 months. See PSR ¶ 98, at 33. The Court will sentence Padilla Jr. to 37-months imprisonment as part of the revocation of his supervised release. Additionally, the Court finds a sentence of 37 months appropriate for the same reasons it varied downward to a sentence of 37-months imprisonment for the sentences for Counts 2 through 4.

### III.   THE COURT HAS NO AUTHORITY TO TELL THE BOP HOW TO CALCULATE PADILLA JR.'S TIME SERVED.

18 U.S.C. § 3585(b)(2) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences, as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been

credited against another sentence.

18 U.S.C. § 3585(b)(2). "[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing. Rather, the authority resides with the Attorney General, as exercised by the federal Bureau of Prisons." United States v. Brown, 212 F.App'x. at 755 (citations omitted). "The Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing. As a result, a federal prisoner dissatisfied with computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence." United States v. Luna-Mora, 180 F.App'x at 849 (citations omitted)(internal quotation marks omitted).

For those reasons, the Court has no authority to tell the BOP how to calculate time served credit. Padilla Jr. must rely on his administrative remedies if he seeks to complain about their calculations. The Court will make certain that the pretrial determination on the cover page of the PSR is accurate so as to facilitate the BOP's calculation of his time served credit.

### IV. THE COURT WILL RECOMMEND PADILLA JR.'S REQUESTED DESIGNATION OF CERTAIN FEDERAL CORRECTIONAL INSTITUTES WHERE HE WILL SERVE HIS SENTENCES.

The Court will recommend that Padilla Jr. be placed in the Federal Correctional Institute La Tuna if his classification is low risk, or alternatively to the Federal Correctional Institute Phoenix. The USPO has recognized that La Tuna is an appropriate facility, assuming Padilla Jr. qualifies as low risk, and that Phoenix is an appropriate facility. While the Court cannot, of course, guarantee that BOP will select one of these facilities as Padilla Jr.'s place of incarceration, the Court will make the recommendation to help Padilla Jr. be near his family, and to increase his chance of rehabilitation.

**IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum, filed

September 6, 2011 (Doc. 164) are granted in part and denied in part.  The Court accepts the parties' modified rule 11(c)(1)(C) plea agreement, and sentences Defendant Jerry L. Padilla Jr. to 37-months imprisonment for Counts 2 through 4 in the Indictment, filed December 16, 2009 (Doc. 18). Pursuant to this plea agreement, the Court will also sentence Padilla Jr. to 37-months imprisonment for the sentence for his revocation of his supervised release in <u>United States v. Jerry Padilla, Jr.</u>, criminal case docket number 94-0618.  The Court will recommend that Padilla Jr. be placed in the Federal Correctional Institute La Tuna if his classification is low risk or, alternatively, to the Federal Correctional Institute Phoenix

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Joel R. Meyers
  Assistant United States Attorney
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Ray Twohig
Albuquerque, New Mexico

 *Attorney for Defendant Jerry L. Padilla, Jr.*

Robert J. Gorence
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant Jerry L. Padilla, III*